IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TIG INSURANCE COMPANY,<br>successor by merger to International<br>Insurance Company, as successor to<br>International Surplus Lines Insurance<br>Company,<br><br>                Plaintiff,<br>v.<br><br>CENTURY INDEMNITY COMPANY,<br>as successor to CCI Insurance Company,<br>as successor to Insurance Company of<br>North America,<br><br>                Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. 7322<br><br>JUDGE KEENAN<br>08 CIV. 7322<br><br>AUG 19 2008<br>U.S.D.C. S.D.N.Y.<br>CASHIERS |

## COMPLAINT

Plaintiff TIG Insurance Company, successor by merger to International Insurance Company, as successor to International Surplus Lines Insurance Company ("TIG"), complains of Defendant Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America ("Century Indemnity"), as follows:

## NATURE OF THE ACTION

1. This is a civil action for breach of a facultative reinsurance contract and arises from Century Indemnity's refusal to indemnify TIG for payments made by TIG under an excess of loss insurance policy.

## THE PARTIES

2. Plaintiff TIG is an insurance company organized under the laws of the State of California with its principal place of business in Manchester, New Hampshire.

3. Defendant Century Indemnity is a corporation organized under the laws of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because TIG and Century Indemnity are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest, costs and fees.

5. This Court has personal jurisdiction over Century Indemnity because, on information and belief, Century Indemnity has transacted and continues to transact substantial business in the State of New York, because Century Indemnity is an insurance company licensed by the New York Department of Insurance, and because Century Indemnity otherwise has the requisite minimum contacts with the State of New York.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

## BACKGROUND

7. A reinsurance contract is an arrangement whereby one insurance company, known as the "ceding company" or the "cedent," obtains insurance from another insurer, known as the "reinsurer," in order to transfer some or all of the insured risk the cedent has assumed.

8. "Facultative reinsurance" applies to a single policy or risk and is negotiated on an individual basis.

## THE FACULTATIVE CERTIFICATE

9. International Surplus Lines Insurance Company ("ISLIC") issued a policy of excess liability insurance, Policy Number XSI 1742 effective from July 1, 1973 to July 1, 1976, to its insured, Eltra Corporation (the "Excess Policy").

10. ISLIC purchased facultative reinsurance coverage for the Excess Policy from Insurance Company of North America ("INA"), which issued Facultative Certificate No. FRC 01514 effective from July 1, 1973 to July 1, 1976 (the "Facultative Certificate") to ISLIC.

4430969.2

11. Pursuant to the Facultative Certificate, INA agreed to reinsure ISLIC for its losses under the Excess Policy in excess of ISLIC's retention and up to a combined single limit of $5 million each occurrence/aggregate part of $15 million each occurrence/aggregate part of $25 million each occurrence/aggregate excess of $25 million each occurrence/aggregate excess of underlying insurance.

12. INA accepted premium payments from ISLIC in exchange for its agreement to reinsure ISLIC through the Facultative Certificate.

13. The Facultative Certificate provides that:

> [T]he liability of the Reinsurer specified in Item 4 of said Declarations shall follow that of the Company and except as otherwise specifically provided herein, shall be subject in all respects to all the terms and conditions of the Company's policy except such as may purport to create a direct obligation of the Reinsurer to the original Insured.

14. Moreover, under the Facultative Certificate:

> All claims involving this reinsurance, when settled by the Company, shall be binding on the Reinsurer, which, shall be bound to pay its proportion of such settlements, and in addition thereto, in the ratio that the Reinsurer's loss payment bears to the Company's gross loss payment, with respect to business accepted on an excess of loss basis and in the ratio that the Reinsurer's limit of liability bears to the Company's gross limit of liability with respect to business accepted on a pro rata basis, its proportion of expenses, other than Company salaries and office expenses, incurred by the Company in the investigation and settlement of claims or suits and, with the prior consent of the Reinsurer to trial court proceedings, its proportion of court costs and interest on any judgment or award.

15. The Facultative Certificate also provides that:

> Payment of its proportion of loss and expense paid by the Company will be made by the Reinsurer to the Company promptly following receipt of proof of loss.

16. Century Indemnity has since assumed the obligations of INA.

17. International Surplus Lines Insurance Company ("ISLIC") merged into International Insurance Company ("IIC") in 1993, and IIC merged into TIG in 2002. TIG has thereby assumed the rights and obligations of ISLIC, and is vested with the legal right to enforce the ISLIC contract at issue here.

## THE SETTLEMENT

18. Since 1983, hundreds of thousands of claimants have brought and continue to bring claims against successors to North American Refractories Company ("Narco"), a wholly-owned subsidiary of Eltra Corporation ("Eltra"), alleging asbestos-related injuries relating to Narco's manufacture of asbestos-containing products (the "Narco Asbestos Claims").

19. Honeywell International Inc. ("Honeywell"), one such successor to Eltra, contended that it was entitled to coverage under the Excess policy for the Narco Asbestos Claims.

20. TIG and Honeywell entered into negotiations, and, in June 2007, TIG and Honeywell executed a Settlement Agreement resolving those entities' coverage dispute as to the Excess Policy (the "Settlement Agreement").

21. Under the Settlement Agreement, TIG is obligated to make payments to Honeywell over a period of years.

## THE BILLINGS

22. In June 2007, TIG made its first required payment to Honeywell under the Settlement Agreement.

23. In July 2007, TIG submitted its first billing and proof of loss, in the amount of $1,333,332, to Century Indemnity.

24. Century Indemnity paid TIG's July 2007 billing, in the amount of $1,333,332.99, in December 2007.

4

4430969.2

25. In December 2007, TIG made its second required payment to Honeywell under the Settlement Agreement.

26. TIG submitted its second billing and proof of loss, in the amount of $1,334,327.67, to Century Indemnity in December 2007.

27. Century Indemnity has failed to pay the billed amounts.

28. TIG has fully complied with its obligations (including any applicable conditions precedent) under the Facultative Certificate.

## COUNT I – BREACH OF CONTRACT

29. TIG realleges each and every allegation set forth in paragraphs 1 through 28 as if set forth in full in Count I.

30. Century Indemnity has refused to pay the amounts now due and owing from TIG's December 2007 billing and proof of loss.

31. In refusing to pay the December 2007 billing and proof of loss, Century Indemnity has breached its obligations to reinsure and indemnify TIG under the Facultative Certificate.

32. As a result of Century Indemnity's breach of the Facultative Certificate, TIG has suffered damages of no less than $1,334,327.67.

## COUNT II – DECLARATORY JUDGMENT

33. TIG realleges each and every allegation set forth in paragraphs 1 through 32 as if set forth in full in Count II.

34. Under the Settlement Agreement, TIG is obligated to make future payments to Honeywell under the Excess Policy.

35. TIG will continue to submit bills to Century Indemnity to reimburse TIG for Century Indemnity's share of such future payments under the Facultative Certificate.

36. Century Indemnity refuses to acknowledge its liability to TIG for present or future losses and loss expenses billed by TIG to Century Indemnity under the Facultative Certificate in connection with the Settlement Agreement.

37. An actual controversy therefore exists between TIG and Century Indemnity with respect to the parties' rights and liabilities under the Facultative Certificate.

38. Pursuant to 28 U.S.C. §2201, TIG is entitled to a declaration that Century Indemnity is obligated under the Facultative Certificate to timely pay to TIG amounts now due and that become due in the future in connection with the Settlement Agreement.

## **PRAYER FOR RELIEF**

WHEREFORE, TIG respectfully requests that the Court enter judgment in TIG's favor and against Century Indemnity as follows:

(a)  A judgment that Century Indemnity breached the Facultative Certificate;

(b)  An award to TIG of $1,334,327.67 in compensatory damages, plus statutory pre-judgment interest, from Century Indemnity;

(c)  A declaration that Century Indemnity must reimburse TIG for its share of current and future losses and loss expense under the Facultative Certificate in connection with payments under the Settlement Agreement;

(d)  Reasonable costs and fees incurred in bringing this action; and

(e)  Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
August 18, 2008

                              WILLKIE FARR & GALLAGHER LLP

                              By: ___/s/ Richard Mancino___
                                   Richard Mancino
                                   (A Member of the Firm)

                              787 Seventh Avenue
                              New York, NY 10019-6099
                              (212) 727-8000

                              Attorneys for Plaintiff TIG Insurance Company

Of Counsel:

James I. Rubin
Catherine E. Isely
Butler Rubin Saltarelli & Boyd LLP
70 West Madison Street
Suite 1800
Chicago, IL 60602